UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN ENRIQUE MEJIA,

        Petitioner,

                                     Case No. 1:10-cv-306
v.                                       Hon. Robert J. Jonker

JOHN PRELESNIK,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

## I.      Background

Petitioner was charged with nine criminal counts: (1) delivery or manufacture of 1,000 or more grams of cocaine, heroin or another narcotic, M.C.L. § 333.7401(2)(a)(i); (2) conspiracy to deliver or manufacture of 1,000 or more grams of cocaine, heroin or another narcotic, M.C.L. § 333.7401(2)(a)(i); (3) possession of 1,000 or more grams of cocaine, heroin or another narcotic, M.C.L. § 333.7403(2)(a)(i); (4) conspiracy to possess 1,000 or more grams of cocaine, heroin or another narcotic, M.C.L. § 333.7403(2)(a)(i); (5) delivery or manufacture of 45 kilograms of marijuana, M.C.L. § 333.7401(2)(d)(i); (6) conspiracy to deliver or manufacture 45 kilograms of marijuana, M.C.L. § 333.7401(2)(d)(i); (7) second or subsequent offender notice for controlled substance felony (double penalty), M.C.L. § 333.7413(2)(a); (8) maintaining a drug house, M.C.L. § 333.7405(d); and, (9) habitual offender, second offense, M.C.L. § 769.10. *People v. Mejia*, No. 06-11859-FH (Kent Co. Cir. Ct.) (docket no. 17). Petitioner was bound over to Kent County Circuit

Court on the charges after a preliminary examination which concluded on November 17, 2006. Prel. Exam Trans. IV at p. 495.

On May 7, 2007, the first day of his scheduled trial, petitioner, represented by counsel, entered a guilty plea to counts (1), (5) and (9). Plea Trans. at pp. 5-15 (docket no. 24). Pursuant to the terms of the plea agreement, in exchange for pleading guilty to counts (1), (5) and (9) with the understanding that the sentences for counts (1) and (5) would "run consecutively along with the habitual offender" enhancement, the government would dismiss the remaining counts. *Id.* at pp. 8-9. During his plea, petitioner admitted to possessing 1,000 grams (1 kilo) of cocaine, but denied that he was responsible for the other 8 kilos of cocaine found at his apartment. *Id.* at pp. 10-14.

On June 8, 2007, petitioner, with new counsel, moved to re-open a suppression hearing and to withdraw his guilty plea. Motion Trans. (June 8, 2007) (docket no. 25). In support of his motion, petitioner submitted an affidavit, stating that he was reluctant to "admit to the cocaine" at his plea because such admission "was not true," and that he "ultimately made an admission about cocaine" because of statements made by his trial counsel on the morning of trial. These statements included, among other things, that trial counsel told him that he must enter a guilty plea for delivery and manufacture of 1,000 grams or more of cocaine and 45 kilos or more of marijuana and the second habitual offender count, and that petitioner had to plead guilty or else he "would get natural life" and never see his young daughter again outside of prison. *See* Petitioner's Affidavit in support of motion to withdraw plea (docket no. 4-2 at pp. 60-65). The court rejected petitioner's affidavit, reasoning in part as follows:

> [A]n affidavit in which a defendant asserts his innocence always has to be given
> serious consideration, but that consideration has to be balanced as against what the

defendant said on oath in open court in a solemn judicial admission.  And of course, in this case we have the defendant, on page 13 of plea transcript, acknowledging that he knew there were 1,000 grams of cocaine in the apartment where 9,000 kilos, or 9,000 grams of cocaine were actually seized.

*      *      *

So certainly, in a solemn judicial proceeding in a courtroom on the record and under oath, the defendant acknowledged that he knew that all 45 kilos of marijuana were in there and, indeed, that he had placed it there, and he knew that at least 1,000 grams, or one kilo, of cocaine were there and that he'd placed them there; and that, with respect to both the cocaine and marijuana, it was his intent to deliver it to someone else.

Now, when somebody makes a solemn statement like that in a courtroom under oath, it seems to me it's a very strong judicial admission, which is not to be lightly tossed aside.

*      *      *

So, not only does the defendant make a solemn statement on oath that he possessed at least 1,000 grams, or one kilogram, of cocaine with intent to deliver at the time and in the place charged in the information, but he indicated that he understood that, if his plea were accepted, he would be giving up any claim that the plea was the result of promises or threats not disclosed, which is not an issue here, and he understood that he'd be giving up any claim that it was not his own free choice to enter the plea, and the defendant said he understood that and chose to go ahead and enter his plea anyway.

So, looks to me as though the plea itself, on the face of it, is pretty solid, and his subsequently filed affidavit, in which he asserts his innocense, seems to me to be a little too little and a little too late, and not really availing against what he do have on the record.

One of reasons we go through this exhaustive plea taking process is to prevent people from later coming back and saying, "Oh, I didn't really mean it.  I didn't do that."  And if going through this ritual does not foreclose this kind of buyer's remorse and coming back after the fact and saying things like that, then it doesn't do any good.  We might as well forget it.

And the process has to have some meaning, some purpose, and it has to have some reliability.  Having gone through it, it has to mean something, and it has to be something we can all rely on.  It has to have some integrity, some finality.

*Id.* at pp. 43-47. After further discussing petitioner's motion to re-open the suppression hearing, the court denied both motions. *Id.* at p. 54.

Petitioner was sentenced on June 19, 2007. Sent. Trans. (docket no. 26). During the sentencing, petitioner's new counsel disputed that petitioner consented to the imposition of consecutive sentences with respect to counts (1) and (5). *Id.* at pp. 1-11. The court disagreed, noting that it was discretionary with the court to impose consecutive sentences as to counts (1) and (5), "but that with respect to the plea agreement, the dismissal of a number of counts, together with the second drug offender charge, was contingent upon consecutive sentencing being ordered." *Id.* at pp. 11-12.

The trial judge also addressed petitioner's claim of innocence with respect to possessing any of the cocaine:

> Now, as to Mr. Mejia's statement, basically he indicated that everyone knows he's not guilty of the cocaine offense, and that he was lied to about the guidelines. Actually, nobody knows that. As far as I can tell, Mr. Mejia is guilty of the cocaine offense. He entered his plea in open court, and acknowledged having placed at least one kilo of the cocaine in the apartment where nine kilos were found, and that he did so with the intent to deliver it to someone else.
>
> As to the guidelines, I know what Mr. Witzel [petitioner's defense counsel] and Mr. Stone [the prosecutor] and I reviewed. They were the printouts that I've referred to, and that Mr. Stone submitted with his sentencing memorandum, and I have to assume that Mr. Witzel shared them with Mr. Mejia.
>
> Moreover, as I recall, Mr. Stone had actually run these the week prior to the start of trial and the plea, which we took, I think on Monday morning, and I think Mr. Witzel had them in hand, based on Mr. Stone's calculations during the week prior to the day of the plea.
>
> Now, if Mr. Witzel did not review them properly with Mr. Mejia, that's an issue that has not been brought to my attention, but may be something that has to be addressed at another time. Mr. Witzel certainly had them in hand, and I have no basis to believe that Mr. Witzel, or anyone else, lied to Mr. Meijia about the guidelines.

So, as far as I can tell, Mr. Mejia, your statement is completely contrary to the facts and circumstances as I understand them to be. I know you've submitted an affidavit maintaining your innocense, but again, it's completely at odds with your sworn statement in open court, and I don't see any reason why your affidavit should be given higher credit than your sworn statement in open court, standing pretty much where you're standing now.

The record indicates there was never any dispute but what [sic] Mr. Mejia possessed this large quantity of marijuana, and 120 pounds of it as I believe, and that he did do with the intent to deliver it. Mr. Mejia himself never denied that.

The only question at the plea was where did the other eight kilos of cocaine come from, and I suppose Mr. Mejia's unstated premise is that his co-defendant, Mr. Camberos, produced those other eight kilos of cocaine to add to the one that Mr. Mejia himself had stored at that address.

In any case, it seems from surveillance and the relationship between the two men, that Mr. Camberos and Mr. Mejia were engaged in this trafficking activity as confederates, and therefore, were operating it together.

The case may be summarized fairly simply. On June 27th of last year, the Grand Rapids police department was conducting a surveillance on a stash house at 2125 Woodburn, S.E. This was the apartment where Mr. Mejia did not live, but he did rent it, apparently for the benefit of his confederate, Mr. Camberos, and the two men evidently were using it, as the term suggests, to stash large quantities of controlled substances.

The police were surveilling the situation, and had been for some time, on June 27th of last year, they stopped Mr. Camberos driving the defendant's 2000 Cadillac Escalade. Again, the connection between the two men becomes all the more obvious when we realize Mr. Camberos is apparently using the apartment rented by the defendant, and is also using the defendant's motor vehicle.

Mr. Camberos was stopped by the police and arrested for driving on a suspended license. Mr. Mejia came to the scene, presumably to take possession of the vehicle. The officers discovered that he was on federal probation or parole, and called his probation or parole agent, and they all went over to the Woodburn address, which apparently Mr. Mejia had not disclosed to his federal probation or parole agent. At that location, nine kilos of cocaine and 121 pounds of marijuana were seized, along with about $10,000.00 in cash.

*Id.* at pp. 14-17.

The court observed, among other things, that the amounts involved in petitioner's case (9 kilos of cocaine and 121 pounds of marijuana), were "a pretty big deal" in Grand Rapids. *Id.* at pp. 19-20. After reviewing various factors, which included petitioner's "relatively generous federal sentence" (on a previous crime) which "had no apparent deterrent impact upon [him] at all," petitioner's agreement to have consecutive sentences, and the magnitude of the offense, the court decided to sentence petitioner "more or less in the midrange of [the] guidelines to consecutive terms of imprisonment." *Id.* at p. 20. On the charge of possession with intent to deliver 45 kilos of marijuana, after noting that petitioner was charged as a second felony offender under Michigan's habitual offender law with a sentencing guidelines range of 43 to 107 months, the court sentenced petitioner to a term of not less than six years (72 months) nor more than 22 1/2 years. *Id.* at pp. 20-21. On the charge of possession with intent to deliver 1,000 grams or more of cocaine, after noting a guidelines range of 135 to 281 months, the court sentenced petitioner to a term of not less than 17 years (204 months) nor more than 60 years. *Id.* at p. 21. Both sentences were to run consecutively. *Id.*

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Court of Appeals raising four issues:

I.  Whether the Circuit Court committed reversible error and denied [petitioner] his constitutional rights to due process under the Michigan and Federal Constitutions when it denied [petitioner's] motion to withdraw his guilty plea?

II. Whether the Circuit Court committed reversible error and denied [petitioner] is constitutional rights to due process under the Michigan and Federal Constitutions when it denied [petitioner's] motion to re-open the suppression hearing to adjudicate issues which had not previously been raised?

III.  Whether [petitioner's] constitutional rights under the Michigan and Federal Constitutions were violated because he does not have an appeal of right?

IV.  Whether the totality of errors requires reversal because the errors in arguments I and II combined to deny [petitioner] his Federal and Michigan Constitutional rights to due process and equal protection?

Appl. for leave to appeal (docket no. 27). The Michigan Court of Appeals denied the application "for lack of merit in the grounds presented." *People v. Mejia*, No. 279205 (Mich. App. Aug. 27, 2007). Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Mejia*, No. 135087 (Mich. Jan. 8, 2008) (docket no. 28).

Petitioner, through counsel, then filed a 49-page motion for relief from judgment pursuant to MCR 6.500 *et seq.* and a request for a *Ginther*[1] hearing in the Kent County Circuit Court. Motion for relief from judgment/*Ginther* hearing (docket no. 4-6). The trial judge denied petitioner's motion as procedurally inappropriate under MCR 6.508(D)(3):

> It is Defendant's contention that he was forced to plead guilty because of the "[c]onstitutionally ineffective lawyering by the attorney who represented defendant through his guilty plea." Defendant concedes that his allegations that Mr. Witzel [his trial counsel] was ineffective had not been raised on direct appeal. Generally, when a motion for relief from judgment alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence, the Court may not grant relief unless the defendant demonstrates both "good cause" for a failure to raise such grounds on appeal and "actual prejudice" from the alleged irregularities that support the claim for relief. Defendant argues that the decision in *Massaro v United States*, 538 US 500; 123 S Ct 1690 (2003), which held that a failure to raise an ineffective assistance of counsel claim on direct appeal does not bar the claim from being brought in a collateral proceeding unde 28 USC 2255,

---

[1] In *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).

permits this Court to consider the issue even if the good cause prong of MCR 6.508(D)(3) is not met.

Assuming, without deciding, that the *Massaro* decision, which did not interpret or apply Michigan law, permits Defendant to side-step the "good cause" requirement, it is clear that Defendant has failed to demonstrate actual prejudice. Contrary to Defendant's contentions, there was no defect in the proceedings that rendered Defendant's plea "an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand." MCR 6.508(D)(3)(ii).[2] Contrary to Defendant's contentions, Mr. Witzel provided effective assistance of counsel as required under the Sixth Amendment, whether considered under the decision of *Holloway v Arkansas*, 435 US 475; 98 S Ct 1173 (1977) and its progeny; the *United States v Cronic*, 466 US 648, 104 S Ct 2093 (1984) case, or the *Strickland v Washington*, 466 US 668, 104 S Ct 2052 (1984) line of cases.

ON ORDER OF THE COURT Defendant's Motion for Relief from Judgment and request for a *Ginther* hearing are hereby considered and the same are hereby denied.

*People v. Mejia*, No. 06-11859-FH (Kent Co. Cir. Ct. April 20, 2009) (docket no. 29).

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Court of Appeals raising the following issue:

Whether the Circuit Court erroneously denied [petitioner] his constitutional rights to be represented by an effective lawyer, pursuant to U.S. Constitution, Am. VI and 1963 Const. Art. I, Sect. 20 were violated when his prior attorney failed: 1) to meaningfully test the people's evidence about cocaine possession; 2) to inform the court or [petitioner] of an actual conflict of interest; 3) to investigate and challenge a protective sweep which yielded critical evidence against [petitioner]; and 4) other grounds as set forth *infra*?

Application for leave to appeal (docket no. 29). The Michigan Court of Appeals denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Mejia*, No. 291904 (Mich. App. June 5, 2009). Petitioner raised the

---

[2] The court notes that the rule cited is MCR 6.508(D)(3)(b)(ii).

same issue in an application for leave to appeal to the Michigan Supreme Court, which that court denied for the same reason. *People v. Mejia*, No. 139306 (Mich. Feb. 26. 2010).

Meija, through counsel, raised two issues in his present federal habeas petition:

I.      [Petitioner's] constitutional rights under the Michigan and Federal Constitutions were violated because he does not have an appeal of right.

II.      [Petitioner's] Constitutional rights to be represented by an effective lawyer, pursuant to U.S. Constional Am. VI and 1963 [Mich.] Const. Art. I, Sect. 20 were violated when his prior attorney failed: 1) to meaningfully test the people's evidence about cocaine possession; 2) to inform the court or [petitioner] of an actual conflict of interest; 3) to investigate and challenge a protective sweep which yielded critical evidence against [petitioner]; and 4) other grounds as set forth *infra*?

Pet. (docket no. 1); Brief (docket no. 2).

## II.      Procedural default

## A.      Procedural default of Issue II

Respondent contends that petitioner's Issue II is barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural

rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner first raised this issue in his post-conviction motion for relief from judgment brought pursuant to MCR 6.500 *et seq*. The trial court denied the motion without considering the merits because petitioner could have raised the issue on appeal and failed to meet the procedural requirements under 6.508(D)(3).[3] Both the Michigan Court of Appeals and the Michigan Supreme Court denied his applications for leave to appeal, because petitioner failed to meet the burden of establishing entitlement to relief under "MCR 6.508(D)". The Sixth Circuit has previously held that

---

[3] MCR 6.508(D)(3) provides in pertinent part as follows:

"**(D) Entitlement to Relief.** The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion . . . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that . . .

(ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand . . .

MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) – i.e., the type of order entered by the Michigan appellate courts this case – "are not explained orders invoking a procedural bar." In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits." *Guilmette*, 624 F.3d at 291. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Id.* Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.

Here, the last reasoned state opinion was the trial court's order denying the motion for relief from judgment. In that order, the trial court determined that petitioner's claims of ineffective assistance of trial counsel could have been raised on appeal. *See* MCR 6.508(D)(3). In determining whether to address the merits of petitioner's claim, the trial court engaged in the "good cause" and "prejudice" determination under were procedurally defaulted under MCR 6.508(D)(3). The trial court noted petitioner's argument which effectively "side-stepped" the good cause requirement under MCR 6.508(D)(3), assumed without deciding that petitioner had met the "good cause" requirement, then determined that he was not entitled to relief for failing to meet the prejudice requirement under MCR 6.508(D)(3)(a)(ii). In short, the last reasoned state court opinion

denied Issue II on procedural grounds without addressing the merits of that issue. Accordingly, petitioner's Issue II is subject to the procedural default doctrine.

### B.  Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Petitioner does not present any cause for his procedural default of Issue II. Rather, he contends that the brief orders entered by the Michigan Appellate Courts were insufficient to establish a procedural default under *Guilmette*, 624 F.3d 286. However, as discussed, *supra*, after applying the rule announced in *Guilmette*, and then reviewing the last reasoned opinion of state court, the court concluded that petitioner's claim was procedurally defaulted. *See Skinner*, 425 Fed. Appx. at 495. In addition, petitioner's reliance on the Supreme Court's decision in *Massaro*, 538 U.S. 500, is misplaced. *Massaro* involved a motion to vacate sentence under 28 U.S.C. § 2255. In that decision, the Supreme Court pointed out the procedure in federal court cases, observing that:

> In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance. When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.

*Massaro,* 538 U.S. at 504-05. Here, petitioner's claim involves a collateral attack of a state court conviction and sentence pursuant to § 2254. Under Michigan law, a criminal defendant can seek to have an evidentiary (*Ginther*) hearing with respect to ineffective assistance of counsel claims prior to filing a direct appeal. Even when a *Ginther* hearing is denied, the Michigan Court of

Appeals routinely addresses claims of ineffective assistance of counsel claims based upon the existing record of the proceedings. Furthermore, the *Massaro* opinion does not apply to a federal habeas action reviewing a state court conviction. As one court explained:

> We reject [the habeas petitioner's] contention that *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), permits us to overlook the procedural defaults he committed as to his claims of attorney ineffectiveness. *Massaro* holds simply that a federal prisoner may assert an ineffectiveness claim on collateral review under 28 U.S.C. § 2255 even if the claim was one that he could have raised (but did not) on direct appeal. *Massaro* is entirely silent on the subject of state prisoners making ineffectiveness claims under section 2254, and it certainly does not purport to overrule ample precedent holding that habeas petitioners must present their claims of attorney ineffectiveness to the state courts before seeking relief in federal court. *See Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam); *see also Stewart v. Smith*, 536 U.S. 856, 861, 122 S.Ct. 2578, 2582, 153 L.Ed.2d 762 (2002); *Edwards v. Carpenter, supra*, 529 U.S. at 452-54, 120 S.Ct. at 1591-92; *Murray v. Carrier, supra*, 477 U.S. at 489, 106 S.Ct. at 2646. To construe *Massaro* as [petitioner] proposes would permit a habeas petitioner to deprive the state courts of the first opportunity to correct a constitutional error and in this way undermine the interests in comity and federalism underlying both the procedural default doctrine as well as the statutory limitations on habeas relief. *See Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir.2003); *see also Gomez v. Jaimet*, 350 F.3d 673, 678 (7th Cir.2003). In short, *Massaro* does not allow us to ignore these procedural defaults.

*Lewis v. Sternes*, 390 F.3d 1019, 1031-32 (7th Cir. 2004).

Petitioner's failure to demonstrate cause for his procedural default of this issue in the state courts prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Claims of actual innocence are rarely successful because such evidence is unavailable in the vast majority of cases. *Id.*

Here, in support of his claim of actual innocence, petitioner presented a declaration in which petitioner stated in pertinent part that he had no knowledge of cocaine found in the apartment and that the cocaine was not his.

18.     I was very surprised to see the cocaine which was discovered in a
        suitcase and underneath a stove. *The cocaine was not mine, and I did
        not know that there was any cocaine in the apartment*.

Petitioner's Decl. at ¶ 18 (docket no. 4-6 at p. 58) (emphasis added).

This declaration was not "new evidence." Petitioner was certainly aware of these facts when he pled guilty in 2007. Furthermore, petitioner's declaration, which is similar in respects to his earlier affidavit filed in support of his motion to withdraw the guilty plea, contradicts petitioner's admissions made under oath as part of his guilty plea that he had arranged to have at least 1,000 grams or more of cocaine delivered to the apartment.[4] While petitioner stated that he did

---

[4] As discussed, *supra*, the trial court had rejected the factual recitations in petitioner's earlier affidavit in favor of petitioner's admissions of guilt made under oath.

not know that 9 kilos of cocaine was stored in his apartment, he admitted his guilt with respect to the charged crime, M.C.L. § 333.7401(2)(a)(i), delivery or manufacture of at least 1,000 grams of cocaine.

> THE COURT: On June 26th of 2006, were you at or near an apartment at 2125 Woodburn, S.E., apartment number 1, in the city of Grand Rapids, Kent County, Michigan?
>
> THE DEFENDANT: They took me over there to that apartment.
>
> THE COURT: They took you there?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, you had previously rented that apartment, is that correct?
>
> THE DEFENDANT: I rented it in March, Your Honor.
>
> THE COURT: All right. So your rented it three or four months prior to June 26th?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: *All right. And did you, as of June 26th of 2006, have stored in that apartment more than 1,000 grams of cocaine and more than 45 kilograms of marijuana?*
>
> THE DEFENDANT: *Yes, Your Honor.*
>
> THE COURT: And these were drugs that you had either placed there yourself, or they were placed there with your knowledge and consent?
>
> THE DEFENDANT: Can you repeat the question, sir?
>
> THE COURT: *Well, you either placed those drugs there yourself, or you arranged for somebody else to place them there, is that right*?
>
> THE DEFENDANT: *Yes, Your Honor.*
>
> THE COURT: And it was an apartment which, as you said, you had rented three months earlier?
>
> THE DEFENDANT: Yes, Your Honor.

THE COURT: And you knew that the substances involved were, in fact, 1,000 grams or more of cocaine and 45 kilograms or more of marijuana? In other words, you had no doubt what the substances were?

THE DEFENDANT: Your Honor, I wasn't aware of about the 1,000 grams of cocaine that were placed in the apartment.

THE COURT: Well, did you know that there was 1,000 grams or more of your cocaine either in that apartment or somewhere else in the area?

THE DEFENDANT: I didn't know it was in that apartment until they took me over there, and I was surprised when I saw that in – those bricks in the suitcase. They belonged to --

THE COURT: Okay. But you knew this cocaine was around there somewhere, is that right, or not? In other words, you had arranged for there to be at least a kilogram of cocaine in that apartment or somewhere else?

THE DEFENDANT: Can I repeat myself, Your Honor. When they took me to that apartment, I was aware that there was some pounds of marijuana in there.

THE COURT: Okay. So you knew about the 45 kilos of marijuana?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now apparently, I'm told, there was upwards of 9 kilos of cocaine there, too.

THE DEFENDANT: I was shocked when they told me about 9 kilos. When I came to Kent County, I was shocked.

THE COURT: *So you had no prior involvement with any cocaine or anything of that sort? You had no idea it was there?*

THE DEFENDANT: *A thousand grams, Your Honor.*

THE COURT: *Well, you knew 1,000 grams were there. A thousand grams – My metrics are a little weak – but 1,000 grams is a kilo, correct?*

THE DEFENDANT: Correct.

THE COURT: *I guess there were 9 kilos. What you're saying is you knew there was at least 1,000 grams there, but you really didn't expect there to be 9,000 grams?*

THE DEFENDANT:  *That's correct, Your Honor.*

THE COURT:        Okay.  But to backtrack here, you knew there was at least 45 kilos of marijuana in the apartment?  You were fully aware of that?

THE DEFENDANT:  That's correct.

THE COURT:        *And you knew there was at least 1,000 grams, i.e, one kilo of cocaine, but you didn't really expect there to be nine kilos of cocaine?*

THE DEFENDANT:  *That's correct, Your Honor.*

THE COURT:        *Okay.  So somebody else brought in several of the cocaine kilos, but at least one of the cocaine kilos, at least 1,000 grams, would have been yours?*

THE DEFENDANT:  *Correct, Your Honor.*

THE COURT:        *And you knew it was cocaine?*

THE DEFENDANT:  *Correct.*

THE COURT:        *Now, that's an awful lot of cocaine and an awful lot of marijuana.  I assume that, by stashing it in this apartment, it was your intent to deliver the cocaine and the marijuana to some other person or persons, is that correct?*

THE DEFENDANT:  *Correct.*

Plea Trans. at pp. 10-15.  Petitioner further testified that: he understood the plea agreement; that he was not promised anything beyond the terms of the agreement in exchange for his guilty plea; that he was not coered or threatened by anyone to enter a guilty plea; and that it was his own free choice to plead guilty.  *Id.* at p. 10.

Neither petitioner's declaration, nor his earlier affidavit of innocence,  are the type of new, reliable, "trustworthy eyewitness accounts" sufficient to meet the actual innocence exception.  *See Bousley*, 523 U.S. at 623-24; *Schlup*, 513 U.S. at 321, 324.  These statements simply recanted petitioner's earlier statements under oath in which he admitted to possessing with intent

to deliver the 45 kilos of marijuana and at least 1 kilo of cocaine. Accordingly, petitioner has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's Issue II is procedurally barred and not subject to habeas review.

### III.      Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted his remaining Issue I.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### IV.    Petitioner's habeas claim (Issue I)

Petitioner contends that his federal constitutional rights to due process and equal protection were violated because he does not have an appeal of right to the Michigan Court of Appeals from his conviction arising from his guilty plea. Here, petitioner relies on the Supreme Court's decision in *Halbert v. Michigan*, 545 U.S. 605 (2005) to support his claim that Michigan has

an unconstitutional procedure limiting the first-tier review of a plea-based conviction to a discretionary appeal, rather than a appeal of right.

"In *Halbert*, the Court held that the Equal Protection and Due Process clauses require the appointment of counsel for indigent defendants seeking first-tier review of plea-based convictions in the Michigan Court of Appeals, even when such appeals are discretionary rather than as of right." *Simmons v. Kapture*, 516 F.3d 450, 451 (6th Cir. 2008). Contrary to petitioner's claim, the Supreme Court's decision in *Halbert* did not find Michigan's appellate procedure to be constitutionally defective. Rather, the Supreme Court treated Michigan's appellate procedure as an acceptable alternative to an appeal as of right. *See Halbert*, 545 U.S. at 617, 619 ("Although [a criminal defendant who pleads guilty] relinquishes access to an appeal as of right, he is entitled to apply for leave to appeal, and that entitlement is officially conveyed to him . . . . Whether formally categorized as the decision of an appeal or the disposal of a leave application, the [Michigan] Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive."). Petitioner has not identified any Supreme Court precedent which requires that a criminal defendant who enters a guilty plea is entitled to an appeal as of right.

The state court's decision, denying petitioner's application for leave to appeal for lack of merit on the grounds presented, was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Accordingly, there is no basis to grant petitioner federal habeas relief on this claim.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  February 4, 2013                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).